IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>ROBERT H. FRANK,<br><br>      Defendant. | No. CR00-1015<br><br>**REPORT AND RECOMMENDATION** |

_____

This matter comes before the court pursuant to movant Robert H. "Butch" Frank's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (docket number 318). Briefs on the merits of this matter have been submitted. This matter was referred to the undersigned United States Magistrate Judge for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned recommends that the application for writ of habeas corpus be denied and this matter be dismissed.

## I. PROCEDURAL HISTORY

Movant Robert Frank and two other individuals, Kimberly K. Welch and Lorin A. Ahlers, were charged with federal crimes in an indictment returned October 30, 2000, in the Northern District of Iowa. The indictment charged all three defendants "with devising and participating in a scheme to defraud" Iowa District Court Judge Thomas Nelson, the Continental Insurance Company, and the United States in connection with a criminal judgment entered against Mr. Frank. Mr. Frank was convicted in February 1988 of the May 1985 arson of Judge Nelson's Dubuque, Iowa, home after Judge Nelson had entered a default judgment against Mr. Frank in a March 1985 divorce proceeding. Mr. Frank was sentenced to 30 years of incarceration and ordered to make restitution in the amount of $250 to Judge Nelson, $121,600.01 to the Continental Insurance Company, and to pay

1

a $300 special assessment to the United States. Upon his release from prison on parole in 1998, Mr. Frank was required to make payments on the criminal judgment and provide the United States Probation Office with monthly financial statements.

Mr. Frank was named in all 50 counts of the October 30, 2000, indictment. Counts 1 through 22 charged Mr. Frank with mail fraud in his attempt to conceal his true assets, income, and earning potential to avoid repayment or collection of the 1988 criminal judgment in violation of 18 U.S.C. §§ 2 and 1341. Counts 23 through 27 charged Mr. Frank with wire fraud in connection with the scheme outlined in Counts 1 through 22 in violation of 18 U.S.C. §§ 2 and 1343. Count 28 charged Mr. Frank with conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Counts 29 through 44 charged Mr. Frank with submitting false statements in his monthly financial statements to the United States Probation Office in violation of 18 U.S.C. § 101. Count 45 charged Mr. Frank with obstruction of justice and aiding and abetting the obstruction of justice in order to facilitate the above outlined scheme in violation of 18 U.S.C. §§ 2 and 1503. Count 46 charged Mr. Frank with money laundering in order to facilitate the above outlined scheme in connection with a transaction involving a 1954 Chevrolet Corvette in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(I). Count 47 charged Mr. Frank with money laundering in order to facilitate the above outlined scheme in connection with a transaction involving a 1995 Dodge Dakota truck in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(I). Count 48 charged Mr. Frank with money laundering in order to facilitate the above outlined scheme in connection with a transaction involving a 1977 Oldsmobile Cutlass in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(I). Count 49 charged Mr. Frank with conspiracy to commit money laundering in order to facilitate the above outlined scheme in violation of 18 U.S.C. §§ 1956(a)(1)(B)(I), 1956(h), and 1957.

Mr. Frank pleaded not guilty to all counts of the indictment on November 6, 2000. On March 21, 2001, Mr. Frank was charged in a second two-count indictment with removal of property to prevent seizure by the United States in violation of

18 U.S.C. § 2232, and obstruction of justice related to the property removal in violation of 18 U.S.C. § 1503. On April 2, 2002, United States District Court Judge Michael J. Melloy[1] ordered the cases against Mr. Frank consolidated for trial. Mr. Frank was convicted on Counts 1–46, 49, and Counts 1 and 2 of the March 21, 2001, indictment following a four day jury trial on November 2, 2002. He was acquitted of Counts 47 and 48.

Mr. Frank was sentenced on February 3, 2003, to 60 months of incarceration on each of Counts 1 through 45, 100 months of incarceration on Counts 46 and 49, and 60 months of incarceration on each of Counts 1 and 2 of the March 21, 2001, indictment. The District Court ordered all terms of imprisonment to run concurrently. He was also charged a special assessment of $4900 and fined $5000. Upon release, Mr. Frank is subject to 3 years of supervised release. The District Court dismissed Count 50 of the indictment.

On February 7, 2003, Mr. Frank gave timely notice of his intent to appeal his conviction to the United States Court of Appeals for the Eighth Circuit. In his brief to the Circuit Court, Mr. Young raised numerous arguments, including that the District Court erred: (1) in allowing into evidence letters Mr. Frank wrote while in prison that were irrelevant to the issues in the case; (2) in denying Mr. Frank's motion for judgment of acquittal and a new trial; (3) in giving the jury an instruction on obstruction of justice; (4) in determining Mr. Frank's base offense level under the U.S. Sentencing Guidelines; (5) in imposing a sentencing adjustment for obstruction of justice; and (6) in imposing a sentencing adjustment for Mr. Frank's role in the offense. The Eighth Circuit affirmed

---

[1] Judge Melloy presided over this case until he was appointed to the United States Court of Appeals for the Eighth Circuit on February 14, 2002. Judge Robert T. Dawson, United States District Court Judge for the Western District of Arkansas, sitting by designation, presided over the remainder of Mr. Frank's district court proceedings.

Mr. Frank's convictions in all respects. United States v. Frank, 354 F.3d 910, 929 (8th Cir. 2004).

The instant motion was filed by Mr. Frank, pro se, on January 5, 2005. In his 28 U.S.C. § 2255 motion, Mr. Frank raises numerous arguments challenging his conviction and sentence. Specifically, Mr. Frank asserts: (1) the sentencing court erred by listing Count 47 in the counts of conviction when he was actually acquitted of Count 47; (2) he is actually innocent of all the charges he was convicted of; (3) his sentence for money laundering is inconsistent with the jury's verdict and the U.S. Sentencing Guidelines; and (4) he was sentenced for conduct not alleged in the indictment or provided in the jury's verdict. This motion was referred to the undersigned United States Magistrate Judge on March 18, 2005, for issuance of a Report and Recommendation.

The government resisted Mr. Frank's section 2255 motion on April 8, 2005. In its resistance, the government asserts that: (1) the reference to Count 47 in the counts of conviction was merely a typographical error that did not result in any prejudice to Mr. Frank because Count 47 was not considered during sentencing; (2) Mr. Frank is not actually innocent of the crimes for which he was convicted; (3) Mr. Frank's money laundering sentence was correctly determined pursuant to the U.S. Sentencing Guidelines; and (4) Blakely v. Washington, 124 S. Ct. 2531 (2004), and United States v. Booker, 125 S. Ct. 738 (2005), do not apply to this collateral review of Mr. Frank's case.

On April 25, 2005, Mr. Frank moved this court to allow him to amend or supplement his section 2255 motion. Mr. Frank claimed that his lack of legal knowledge prevented him from filing a sufficient section 2255 motion, which would have included arguments such as, but not limited to: (1) "ineffective assistance of counsel"; (2) that he was deprived of his rights guaranteed by Article III and the Fifth and Sixth Amendments of the Constitution; (3) that Judge Dawson violated Article IV of the Constitution; and (4) that his sentence exceeds what was warranted by his conviction in violation of Article

4

III and the Fifth and Sixth Amendments of the Constitution. The motion was granted by the undersigned United States Magistrate Judge on May 27, 2005.

Mr. Frank filed a reply to the government's resistance to his section 2255 motion on April 29, 2005, approximately one month prior to the undersigned United States Magistrate Judge's grant of Mr. Frank's motion to amend his section 2255 motion. In his reply, Mr. Frank asserts that "[t]he first 21 pages of the Government's response actually has nothing to do with Petitioner's claims. Thus, is [sic] nothing more than a smoke screen." However, instead of merely rebutting the government's arguments, Mr. Frank improperly raises numerous new arguments in support of his section 2255 motion. Mr. Frank begins by making what this court deems an unsophisticated claim of ineffective assistance of counsel, stating that "at his sentencing, the judge, prosecutor and his then attorney knowingly and intentionally stoled [sic] and deprived him of rights guaranteed him then by Article III, § 2, Clause 3 and the Fifth and Sixth Amendments of our Constitution." Mr. Frank then proceeds to assert 11 additional grounds in support of his section 2255 motion. He specifically asserts that: (1) the Fifth Amendment bars the government from bringing new allegations in a Presentence Report (PSIR) that result in an increased sentence because a new grand jury indictment for the new allegations is required; (2) the sentencing statute, 18 U.S.C. § 3553, and the U.S. Sentencing Guidelines that directed the sentencing court to determine new charges in his PSIR that resulted in an increased sentence are unconstitutional; (3) he is not raising a Blakely/Booker claim, rather, he is arguing that Article III, Article VI, and the 5th and 6th Amendments of the Constitution prohibit sentencing judges from finding a defendant guilty of certain facts and offenses not submitted to a jury; (4) his sentence exceeds what is constitutionally permissible for the crime for which he was convicted; (5) a portion of his sentence is constitutionally invalid; (6) the procedure under which he was sentenced did not comply with Article III and the Fifth and Sixth Amendments of the Constitution; (7) the Constitution "is the supreme law of the land and all judges shall support said

Constitution"; (8) the U.S. Sentencing Guidelines are constitutionally impermissible; (9) sentencing judges cannot act in violation of the Constitution; (10) Blakely v. Washington and its "progeny" have fully clarified the application of the Sixth Amendment to sentencing procedures; and (11) he can challenge his sentence at any time.

Mr. Frank filed an amendment to his section 2255 motion on June 24, 2005. In the amendment, Mr. Frank asserts numerous claims, all of which pertain to the same argument: that the sentencing court violated the Constitution when it enhanced his sentence in accordance with his PSIR.[2] Although Mr. Frank raised numerous claims in his reply to the government's resistance and his amendment to his section 2255 motion, with the exception of his inexplicit ineffective assistance of counsel claim, all of his new claims are simply reassertions of the fourth argument of his original section 2255 motion. Mr. Frank has failed, with the exception of the ineffective assistance of counsel claim, to raise any new issues in support of his motion in either his reply or his amendment to his original motion. Furthermore, Mr. Frank inappropriately used his reply to the government's resistance in an attempt to raise new arguments in support of his motion before this court had granted his motion to amend. This court will not separately address the arguments Mr. Frank improperly raised in his reply to the government's resistance. However, as stated, with the exception of the ineffective assistance of counsel claim, Mr. Frank did not raise any new arguments in his reply, or his amendment. This court will address Mr. Frank's ineffective assistance of counsel claim even though it was

---

[2] Mr. Frank listed 11 arguments in his amendment to his section 2255 motion. Arguments 1 and 2 state that mandatory sentencing enhancements are unconstitutional. Arguments 3 through 11 allege a violation of double jeopardy pertaining to the sentencing enhancements, that the enhancements are unconstitutional (repetition from arguments 1 and 2), that Judge Dawson violated the Constitution in determining Mr. Frank's sentence, and that Mr. Frank's sentence is unconstitutional. Specifically, arguments 4 through 10 all claim that Mr. Frank's sentence was unconstitutional. These are merely reassertions of the fourth argument Mr. Frank set forth in his original section 2255 motion.

improperly raised because of the argument's importance to the remainder of the instant motion.

## II. CONCLUSIONS OF LAW

### A. Standard Under 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 states in pertinent part:

> A prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Section 2255 is the statutory analogue of habeas corpus for persons in federal custody. Poor Thunder v. United States, 810 F.2d 817, 821 (8th Cir. 1987). "Like habeas itself, Section 2255 is not the equivalent of a direct appeal. There are many claims of error sufficiently grave and prejudicial to cause a reversal of conviction on direct appeal, but yet not fundamental enough to support a collateral attack" under section 2255. Id. at 821. Consequently, relief under section 2255 is reserved solely for "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if [left] uncorrected, would result in a complete miscarriage of justice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citing Poor Thunder, 810 F.2d at 821).

Ordinarily, the failure of a section 2255 movant to raise an issue on direct appeal acts to procedurally bar him or her from raising that issue for the first time in a motion pursuant to section 2255.[3] Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997).

---

[3] The rule of procedural default applies with equal force to an adjudication of guilt based on a defendant's plea of guilty as it does to a court or jury conviction. See Reid v. United States, 976 F.2d 446, 448 (8th Cir. 1992) (applying the rule of procedural default
(continued…)

More specifically, as a result of a section 2255 movant's failure to raise an issue on appeal, the Circuit Court "cannot review his claims on their merits unless [the movant] is able to demonstrate either [1] cause for his default and actual prejudice, or [2] that the failure to consider his claims would result in a fundamental miscarriage of justice." McCall v. Benson, 114 F.3d 754, 758 (8th Cir. 1997) (citing Cole v. Thompson, 501 U.S. 722, 750 (1991)). The requirement of cause and prejudice means that a section 2255 movant "may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error." Apfel, 97 F.3d at 1076 (citing United States v. Frady, 456 U.S. 152, 167–68 (1982)). The "fundamental miscarriage of justice" exception to procedural default is "only available to a [movant] who demonstrates 'that a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" McCall, 114 F.3d at 758. The rule of procedural default recognizes that the significant interest of finality in criminal cases retains strength only if the direct appeal remains the exclusive route for complaining of errors that demonstrate neither "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." Id. at 821–22 (citing Johnson v. United States, 805 F.2d 1284, 1287 (7th Cir. 1986) (quoting Hill v. United States, 368 U.S. 424, 428 (1962))).

Once a court has decided the merits of all of the movant's claims which are properly before it, and has further determined whether the remaining claims may be excused from procedural default based on cause and prejudice, the court may analyze whether based upon a claim of actual innocence under the fundamental miscarriage of justice exception, the movant can avoid procedural default. See Dretke v. Haley, 541 U.S. 386 (2004). The actual innocence exception to procedural default "applies only when a [movant] shows by clear and convincing evidence that, but for the alleged constitutional error, no reasonable

---

³(…continued)
after the defendant's knowing and voluntary plea of guilty).

8

juror would have found the petitioner guilty." Anderson v. United States, 25 F.3d 704, 706–07 (8th Cir. 1994). Furthermore, "[t]he exception only applies to claims of factual innocence as opposed to legal innocence." Id. at 707. Specifically, a movant claiming actual innocence must show: (1) that his allegations of constitutional error are supported by new reliable evidence that was not presented at trial; and (2) that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997). The fundamental miscarriage of justice exception is to remain rare and only be applied in the extraordinary case, reserved solely for those who are "truly deserving." Id. at 1351 (citing Schlup v. Delo, 513 U.S. 298, 321–22 (1995)). Accordingly, the actual innocence exception mandates "review of procedurally barred, abusive, or successive claims only in the narrowest type of case—when a fundamental miscarriage of justice would otherwise result." Id. (citing Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996)).

### B.  Standard Regarding Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Strickland, 466 U.S. at 684.

> [T]he right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart, 506 U.S. at 364 (quoting United States v. Cronic, 466 U.S. 648, 658 (1984)). A criminal defendant is also entitled to effective assistance of counsel on a first appeal. Rogers v. United States, 1 F.3d 697, 700 (8th Cir. 1993); Estes v. United States, 883 F.2d 645, 648 (8th Cir. 1989).

Absent unusual circumstances, a section 2255 movant's demonstration of ineffective assistance of counsel satisfies the cause and prejudice standard of procedural default. Apfel, 97 F.3d at 1076. However, in order to successfully demonstrate ineffective

assistance of counsel within the context of section 2255, the movant faces a heavy burden. See id. at 1076. In the context of a motion under section 2255, a claim of ineffective assistance of counsel is to be analyzed under the two-part test set forth in Strickland v. Washington. The United States Supreme Court reformulated the Strickland test for constitutionally ineffective assistance of counsel in Lockhart v. Fretwell. The Eighth Circuit's application of this test states:

> Counsel is constitutionally ineffective under Fretwell when: (1) counsel's representation falls below an objective standard of reasonableness; and (2) the errors are so prejudicial that the adversarial balance between defense and prosecution is upset, and the verdict is rendered suspect.

English v. United States, 998 F.2d 609, 613 (8th Cir. 1993) (citing Lockhart, 506 U.S. at 369–70). Review of trial counsel's performance is deferential and the presumption is that trial counsel was competent and effective. Strickland, 466 U.S. at 689; Smith v. Lockhart, 921 F.2d 154, 156 (8th Cir. 1990). Reasonable trial strategy cannot rise to the level of ineffective assistance of counsel. Id. (citing Stacey v. Solem, 801 F.2d 1048, 1051 (8th Cir. 1986)). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," Strickland, 466 U.S. at 690, even if those strategic decisions prove unwise. Wing v. Sargent, 940 F.2d 379, 381 (8th Cir. 1988), cert. denied, 489 U.S. 1088 (1989). Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Strickland, 466 U.S. at 693.

If a section 2255 movant fails to demonstrate ineffective assistance of counsel as cause for the procedural default and prejudice attributable thereto, he or she may not obtain review of the defaulted claim. See Wainright v. Sykes, 433 U.S. 72 (1977). In the context of ineffective assistance of counsel, "cause" for procedural default must ordinarily be demonstrated by showing that some objective factor external to the defense impeded counsel's efforts to comply with the applicable procedural rule or standard of conduct. See

Smith, 882 F.2d at 333 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). "When counsel's conduct has impeded the [movant's] effort to bring a claim," such ineffective assistance of counsel constitutes "cause" for purposes of avoiding procedural default. See id.

In addition to establishing "cause," a section 2255 movant must "shoulder the burden of showing, not merely that errors at his trial created a possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Where conduct has not prejudiced the movant, the court need not address the reasonableness of that conduct. Id. at 691; United States v. Williams, 994 F.2d 1287, 1291 (8th Cir. 1993). To determine whether there is prejudice, the court examines whether the result has been rendered "unreliable or fundamentally unfair" as a result of counsel's performance. Lockhart, 506 U.S. at 364; West v. United States, 994 F.2d 510, 513 (8th Cir. 1993). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. Lockhart, 506 U.S. at 372, quoted in West, 994 F.2d at 513. Prejudice does not exist unless "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, quoted in Williams, 994 F.2d at 1291.

### C. Mr. Frank's Claims for Relief Pursuant to 28 U.S.C. § 2255

#### 1. Count 47 Discrepancy

Mr. Frank accurately claims that Count 47, of which he was acquitted, is listed as a count of conviction in the criminal judgement signed by Judge Dawson on January 31, 2003. However, Mr. Frank's claim that he has suffered prejudice worthy of section 2255 relief because of this error lacks merit.

Count 47 of the indictment charged Mr. Frank with money laundering in connection with a transaction involving a 1995 Dodge Dakota truck in violation of 18 U.S.C. §§ 2 and

1956(a)(1)(B)(I). However, the criminal judgment which states Mr. Frank was convicted of Count 47 lists Count 47 as "Conspiracy to Commit Money Laundering by Engaging in a Financial Transaction to Conceal the Proceeds of Unlawful Activity," in violation of 18 U.S.C. §§ 1956(a)(1)(B)(I), 1956(h), and 1957. The indictment lists "Conspiracy to Commit Money Laundering by Engaging in a Financial Transaction to Conceal the Proceeds of Unlawful Activity" as Count 49. Mr. Frank was convicted of Count 49. Thus, the listing of Count 47 as a count of conviction is merely a typographical error; Count 49 should have been listed in its place. The only error in the counts of conviction is the number of the count, not the underlying offense that is listed. Although the criminal judgment listed Count 47 as a count of conviction, Mr. Frank did not suffer any prejudice because he was sentenced according to the underlying offense outlined in Count 49 of the indictment. No difference in Mr. Frank's sentence would have resulted had the criminal judgment correctly listed Count 49 instead of Count 47. Thus, Mr. Frank's claim lacks merit because his sentence was determined correctly. Nonetheless, this court recommends that the counts of conviction be renumbered, nunc pro tunc, to accurately reflect Count 49, not Count 47, as a count of conviction.

### 2. Actual Innocence

Mr. Frank asserts that he is actually innocent of "any aiding, abetting, attempting, or conspiring to defraud the United States," in regards to the criminal judgment levied against him as a result of his 1988 arson conviction. In support of this argument, Mr. Frank states that he is not guilty of any of the crimes outlined in the indictment because the 1988 criminal judgment did not set forth an explicit payment schedule. However, because Mr. Frank failed to raise this issue with the District Court or on direct appeal, this claim is procedurally barred unless Mr. Frank can demonstrate either "[1] cause for his default and actual prejudice, or [2] that the failure to consider his claims would result in a fundamental miscarriage of justice." McCall, 114 F.3d at 758. A successful actual innocense claim would satisfy the fundamental miscarriage of justice

exception, negate the procedural bar, and allow Mr. Frank's argument. To avoid the procedural bar through a claim of actual innocense, Mr. Frank must "show[] by clear and convincing evidence that, but for the alleged constitutional error, no reasonable juror would have found [him] guilty." Anderson, 25 F.3d at 706–07. However, Mr. Frank must also show that: (1) his allegations of constitutional error are supported by new reliable evidence that was not presented at trial; and (2) it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Weeks, 119 F.3d at 1351.

Mr. Frank has failed to present any new evidence that was not presented at trial in support of his actual innocense argument. He simply claims that the "Order of Restitution . . . did not provide a legislatively required repayment order," as justification for the scheme he participated in to avoid repayment of the 1988 criminal judgment. He has not presented any new evidence that states he is actually innocent of the crimes for which he was convicted. Mr. Frank cites 18 U.S.C. § 3572(d) as authority for his assertion. Section 3572(d) does not impose any mandates concerning the repayment of criminal judgements. It simply states that, "[i]f the court provides for payment installments, the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule." 18 U.S.C. § 3572(d)(1). Nowhere in this statute is there any language that would in any way absolve Mr. Frank from his guilt in avoiding repayment of the 1988 criminal judgment. In fact, this court is confused by Mr. Frank's claim of actual innocense because instead of actually claiming innocense, he seems to simply state that the lack of an explicit payment schedule somehow justifies his actions. A claim of actual innocense could only derive from an assertion that the defendant did not owe restitution or did not attempt to conceal his income and assets. Without any new evidence, it is extremely unlikely that any reasonable juror would have acquitted Mr. Frank of the crimes for which he was convicted. The argument is procedurally barred.

### 3. Money Laundering Sentence

Mr. Frank claims that the sentence he received for his money laundering convictions is inconsistent with the jury's verdict and the U.S. Sentencing Guidelines. Mr. Frank was sentenced in accordance with the 2000 Sentencing Guidelines, which provided for a base offense level of 21 under § 2S1.1. Frank, 354 F.3d at 926. Mr. Frank asserts that the 2002 Sentencing Guidelines should have determined his sentence, which, he asserts, would have resulted in a lower base offense level.

This issue was raised on Mr. Frank's direct appeal to the Eighth Circuit and denied. Id. at 928. The Eighth Circuit is clear that "claims which were raised and decided on direct appeal cannot be re-litigated on a motion to vacate pursuant to 28 U.S.C. § 2255." United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981). This is true even if "the issues were raised on direct appeal in a pro se brief," such as in the instant case. Id. Furthermore, in its denial of Mr. Frank's argument, the Eighth Circuit noted that Mr. Frank would have received a base offense level of 24 had the 2002 Sentencing Guidelines determined his sentence, "which is at least three levels higher than that which [he] received under the 2000 guidelines." Frank, 354 F.3d at 928. The Eighth Circuit's denial of the issue was based on its determination that the "district court properly used the sentencing guidelines in effect at the time the offenses of conviction were committed so as to avoid a violation of the ex post facto clause." Id. Mr. Frank's argument is barred pursuant to Eighth Circuit precedent.

### 4. Constitutionality of Sentence

Mr. Frank's final argument, which he reasserts in numerous forms in his reply to the government's resistance and his amendment to his original section 2255 motion, states that his sentence is unconstitutional because he was sentenced for conduct not alleged in the indictment or provided in the jury's verdict. In its resistance, the government addresses this argument as an unsophisticated Blakely v. Washington/United States v. Booker claim. Mr. Frank denies that his claim is based upon the principles set forth by

the United States Supreme Court in Blakely or Booker. He asserts that it is not Blakely or Booker, but Article III and the Fifth and Sixth Amendments of the Constitution that support his argument. This court agrees with the government that Mr. Frank is actually making a Blakely/Booker claim.

Mr. Frank's argument is premised on the fact that his sentence was enhanced post-trial by information contained in his PSIR, including, but not limited to, information pertaining to his role in the offense, his criminal history, and his violation of the 1988 criminal judgment. Mr. Frank claims that the sentence-enhancement information in his PSIR constituted new charges. By enhancing his sentence according to the PSIR, Mr. Frank insists that Judge Dawson found him guilty of these "new" charges without the benefit of a constitutionally-guaranteed jury trial. As this court understands it, Mr. Frank's claim is that he was entitled to have a jury decide all facets of his trial and sentencing. Although Mr. Frank insists that Blakely and Booker do not apply, he is wrong. Blakely and Booker directly address sentencing issues under the constitutional provisions cited by Mr. Frank. Mr. Frank admits this in his reply to the government's resistance. Furthermore, Mr. Frank's claim, that the issues that resulted in the enhancement of his sentence required submission to a jury, is the exact issue the Supreme Court dealt with in Blakely and later in Booker.

In Blakely, the United States Supreme Court held that any departure, either upward or downward, beyond that authorized by statute, requires submission of the issue to a jury unless the underlying facts creating the departure are admitted by the defendant. 124 S. Ct. at 2543. In Booker, the Supreme Court held that the Blakely principle applied to departures from the U.S. Sentencing Guidelines. 124 S. Ct. at 755–56. In doing so, the Court also held that the Sentencing Guidelines are not mandatory, but are merely advisory. Id. at 757. Thus, the Court's holding "requires a sentencing court to consider Guidelines ranges . . . [,] but it permits the court to tailor the sentence in light of other statutory concerns . . . ." Id. (citations omitted). However, the Court held that its Booker

holding only applied retroactively to "all cases on direct review." Id. at 769. The Court makes no mention of cases on collateral review.

The United States Supreme Court's decision in Blakely was an extension of the principle it set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the Court held that, "'other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Id. at 490, quoted in Schriro v. Summerlin, 124 S. Ct. 2519, 2522 (2004). New procedural rules announced by the Court apply retroactively "to all criminal cases still pending on direct review." Schriro, 124 S. Ct. at 2522. However, new procedural rules only apply in limited circumstances to convictions that are already final. Id. The Court set forth a three-step analysis regarding the application of new procedural rules to cases on collateral review in Teague v. Lane, 489 U.S. 288 (1989), which the Court recently reaffirmed in Beard v. Banks, 124 S. Ct. 2504 (2004). The analysis involves determining: (1) "when the defendant's conviction became final"; (2) "whether the rule is actually 'new'"; and (3) "whether [the rule] falls within either of the two exceptions to nonretroactivity." Id. at 2510. The two exceptions to this rule involve substantive rules and constitutional determinations. Schriro, 124 S. Ct. at 2522. The latter exception involves "'watershed' procedural rule[s] entitled to retroactive effect." Id. at 2523. As the Court stated in Schriro v. Summerlin, "[s]uch rules apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." Id. at 2522–23 (quoting Bousley v. United States, 523 U.S. 614, 620–21 (1998)).

Although the United States Supreme Court has not explicitly addressed whether Booker satisfies the Teague Test and is retroactively applicable to cases on collateral review, all of the Circuit Courts that have addressed this issue have held that it is not to be retroactively applied. The Sixth Circuit has noted that "[t]he Supreme Court has never

16

held that a new rule of criminal procedure falls within Teague's second exception," and thus the rule announced in Booker was not a watershed procedural rule worthy of retroactive application to cases on collateral review. Humphress v. United States, 398 F.3d 855, 863 (6th Cir. 2005) (citing Beard, 124 S. Ct. 2513–14). The Seventh Circuit has also held that Booker does not represent a "watershed" procedural rule and "does not apply retroactively to criminal cases that became final before its release on January 12, 2005." McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005). The Tenth Circuit has undertaken the same Teague analysis and reached the same conclusion. United States v. Bellamy, No. 04-5145, 2005 WL 1406176, at *3 (10th Cir. June 16, 2005). The Second, Fifth, and Eleventh Circuits have held that because the Supreme Court did not explicitly state that Booker was applicable to cases on collateral review, it does not apply retroactively to collateral cases. Green v. United States, 397 F.3d 101, 103 (2d Cir. 2005); In re Elwood, 408 F.3d 211, 213 (5th Cir. 2005); In re Anderson, 396 F.3d 1336, 1339 (11th Cir. 2005). The First and Third Circuits have adhered to the above outlined reasoning and relied on the fact that every Circuit Court that has addressed whether Booker is retroactively applicable to cases on collateral review has determined that it is not. Cirilo-Munoz v. United States, 404 F.3d 527, 533 (1st Cir. 2005); Lloyd v. United States, 407 F.3d 608, 614 (3d Cir. 2005). Finally, the Eighth Circuit, following the same reasoning promulgated by its sister circuits, has held that "the 'new rule' announced in Booker does not apply to criminal convictions that became final before the rule was announced, and thus does not benefit movants in collateral proceedings," such as Mr. Frank. Never Misses a Shot v. United States, No. 05-1233, 2005 WL 1569403, at *2 (8th Cir. July 7, 2005).

In accordance with the above reasoning regarding the lack of retroactive applicability of Booker to cases on collateral review, Mr. Frank is not entitled to any relief under Booker. Thus, Mr. Frank's numerous assertions of violations of his constitutional rights by the government and Judge Dawson lack merit, as do his assertions that the

assistance of his counsel, Mr. Wallace L. Taylor, was ineffective. Mr. Taylor's failure to predict a <u>Blakely/Booker</u> claim regarding the enhancement of Mr. Frank's sentence does not represent assistance of counsel that fell below an objective standard of reasonableness.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections to this Report and Recommendation within ten (10) days of the date of this Report and Recommendation, that the movant's motion for relief under 28 U.S.C. § 2255 be denied.[4]

July 19, 2005.

*[signature]*
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[4] Any party who objects to this Report and Recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the Report and Recommendation must arrange promptly for a transcription of all portions of the record that the district court judge will need to rule on the objections.